UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. _____

MARY BOWDEN,

     Plaintiff,

v.

ROYAL CARIBBEAN CRUISES LTD.,
d/b/a "The Royal Caribbean Group"

     Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiff sues Defendant and alleges:

### PRELIMINARY ALLEGATIONS

1. The Plaintiff, MARY BOWDEN, is a U.S. citizen and resident of the state of Florida.

2. Defendant, ROYAL CARIBBEAN CRUISES LTD. (hereinafter "Royal Caribbean"), is a foreign corporation with its principal place of business in Florida.

3. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1333 (the Court's admiralty jurisdiction) because the case presents a maritime tort given the facts alleged herein. Notwithstanding that this matter falls under the Court's admiralty jurisdiction, the Plaintiff hereby requests an advisory jury trial pursuant to the Saving to Suitors Clause of 28 U.S.C. § 1333.

4. At all times material hereto, Defendant, personally or through an agent:

    a. Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

    b. Was engaged in substantial activity within this state;

    c. Operated vessels in the waters of this state;

**- 1 -**

    d.  Committed one or more of the acts stated in Florida Statutes §§ 48.081, 48.181 or 48.193;

    e.  The acts of Defendant set out in this Complaint occurred in whole or in part in this county and/or state.

    f.  Defendant was engaged in the business of providing to the public and to Plaintiff in particular, for compensation, vacation cruises aboard the cruise ships.

5.  Defendant is subject to the jurisdiction of the courts of this state.

6.  The causes of action asserted herein are governed by General Maritime Law, and Florida State law, to the extent there is no conflict with General Maritime Law.

**FACTS COMMON TO ALL COUNTS**

7.  At all times material hereto, Defendant owned, operated, managed, maintained and/or controlled the subject cruise vessel, the *Voyager of the Seas* ("the vessel").

8.  At all times material hereto, Defendant had exclusive custody and control of the vessel, and operated same in navigable waters.

9.  At all times material hereto, Plaintiff held the status of a lawful passenger aboard Defendant's vessel; Plaintiff's subject voyage aboard the vessel spanned from March 17-22, 2025.

10. During the subject voyage, and on March 19, 2025, the vessel called at port in Cozumel, Mexico, a scheduled port of call for the subject voyage.

11. At this port of call, and on March 19, 2025, Plaintiff injured her knee. More specifically, Plaintiff sustained a left leg fracture near her knee, with popliteal artery rupture.

12. It is common knowledge, well accepted in basic first aid training and emergency medicine, that a leg fracture near or at the knee carries a significant risk of popliteal artery rupture.[1] It is also

---

[1] *See e.g.* Roy S, Patidar B, Bhangale Y, Badole CM. **Popliteal Artery Injury Associated with Proximal Tibia Fracture: A Case Report**. J Orthop Case Rep. 2025 Jun;15(6):34-38. doi: 10.13107/jocr.2025.v15.i06.5654. PMID: 40520716; PMCID: PMC12159643, available here: https://pubmed.ncbi.nlm.nih.gov/40520716/; Imerci A, Ozaksar K, Gürbüz Y, Sügün TS, Canbek U, Savran

common knowledge, well accepted in basic first aid training and emergency medicine, that popliteal artery rupture causes blood and nerve loss to the limb, thus carrying significant risk for limb loss.[2] These medical notes are well known to cruise ship doctors and/or cruise lines that provide and make available shipboard physicians to its passengers, like Royal Caribbean and its shipboard doctors aboard the vessel.

13. Following Plaintiff sustaining her injury, she was transported to a hospital in Mexico, where x-ray diagnostics of her injured left leg revealed a diagnosis of a left leg fracture near her knee, with risk of popliteal artery rupture.

14. The Mexican hospital then made contact with Defendant, Royal Caribbean via the vessel, which at that time was still in port in Cozumel. Upon information and belief, the Mexican hospital informed Royal Caribbean of Plaintiff's diagnosis, and transmitted to Royal Caribbean Plaintiff's Mexican hospital records, including x-ray diagnostic findings; Royal Caribbean's shipboard physician(s), and shoreside physician(s) in Florida, then reviewed Plaintiff's Mexican hospital records, including x-ray diagnostic findings, while Plaintiff was transported via ground ambulance back to Royal Caribbean's vessel.

15. When Plaintiff returned to Royal Caribbean's vessel via ground ambulance, Royal Caribbean's shipboard physician(s) visually and/or physically examined Plaintiff while she was in

---

A. **Popliteal artery injury associated with blunt trauma to the knee without fracture or dislocation**. West J Emerg Med. 2014 Mar;15(2):145-8. doi: 10.5811/westjem.2013.12.18223. PMID: 24672601; PMCID: PMC3966444, available here: https://pmc.ncbi.nlm.nih.gov/articles/PMC3966444/?utm_source=chatgpt.com.

[2] *See e.g.* Mullenix PS, Steele SR, Andersen CA, Starnes BW, Salim A, Martin MJ. **Limb salvage and outcomes among patients with traumatic popliteal vascular injury: an analysis of the National Trauma Data Bank**. J Vasc Surg. 2006 Jul;44(1):94-100. doi: 10.1016/j.jvs.2006.02.052. PMID: 16828431, available here*:* https://pubmed.ncbi.nlm.nih.gov/16828431/ ; Keeley J, Koopmann M, Yan H, DeVirgilio C, Putnam B, Plurad D, Y Kim D. **Factors Associated with Amputation after Popliteal Vascular Injuries**. Ann Vasc Surg. 2016 May;33:83-7. doi: 10.1016/j.avsg.2016.02.004. Epub 2016 Mar 18. Erratum in: Ann Vasc Surg. 2017 Feb;39:312. doi: 10.1016/j.avsg.2017.02.001. PMID: 26996406, available here: https://pubmed.ncbi.nlm.nih.gov/26996406/

the ambulance. Royal Caribbean, through its shipboard physician(s), then <u>refused</u>: i) to grant Plaintiff the ability to re-board the vessel; ii) shipboard medical treatment (including, but not limited to, further evaluating the seriousness of her injury and/or stabilizing her injury); and iii) to assist Plaintiff obtain emergency medical transit to a Tier I trauma medical facility in the U.S.

16. As a direct result of Royal Caribbean's refusal and failure to assist Plaintiff, Plaintiff's left leg fracture injury with popliteal artery rupture worsened due to the passage of time without prompt and proper medical treatment, and Plaintiff's left leg was amputated above the knee. In addition to the pain and suffering this incident caused Plaintiff in the past, and that which she will suffer in the future, Plaintiff also suffers from functional limitations, past and future, and incurred over $30,000 in out-of-pocket medical expenses.

17. At all times material, Royal Caribbean's shipboard and shoreside medical doctors were the agents and/or apparent agents of Royal Caribbean, such that Royal Caribbean is vicariously responsible for the negligent conduct of their shipboard and shoreside medical doctors, as Royal Caribbean at all times material made representations to Plaintiff that led her and her family to believe Royal Caribbean's physicians had the authority to act on Plaintiff's behalf (such as wearing name tag with Royal Caribbean's logo on it; working on Royal Caribbean's ship; and giving Plaintiff definite responses on Royal Caribbean's behalf); and also, Royal Caribbean maintained the ability to terminate its shipboard and shoreside medical doctors. In addition, Royal Caribbean's shipboard doctors, who directly failed and/or refused to provide Plaintiff medical treatment and assistant, in contravention of Royal Caribbean's stated promise, were Royal Caribbean's crewmembers and agents, as those doctors were central to the vessel's mission to provide vacation cruises to passengers, in that if passengers were injured during the cruise, the shipboard physicians

needed to provide them medical care. *See e.g. See* Cruise Vessel Security and Safety Act of 2010, "CVSSA", 46 U.S.C. § 3507.

18. In summary, Royal Caribbean, while operating the subject vessel in navigable waters during the subject voyage, and while employing and controlling its shipboard and shoreside medical doctors, directly caused Plaintiff's left leg amputation injury and/or aggravated her underlying injury and made it worse than it otherwise would have been (as her leg could have been salvaged), by conduct that includes, but is not limited to:

   a. Failing to act reasonably under the circumstances in evaluating Plaintiff's injury;

   b. Refusing to provide Plaintiff with proper medical treatment, including stabilization and further evaluation; and

   c. Failing to reasonably assist Plaintiff obtain emergency evacuation to proper medical specialist.

## Royal Caribbean's Liability

19. Royal Caribbean, as the owner and operator of the *Voyager of the Seas* – a cruise vessel carrying more than carrying 250 passengers, with overnight berths, embarking/disembarking in the U.S. – must comply with 46 U.S.C. § 3509. *See* Cruise Vessel Security and Safety Act of 2010, "CVSSA", 46 U.S.C. § 3507.

20. 46 U.S.C. § 3509, as part of the CVSSA, provides:

The owner of a vessel to which section 3507 [46 USCS § 3507] applies shall ensure that—
   (1) **a physician is always present and available to treat any passengers who may be on board the vessel in the event of an emergency situation**;

   (2) the vessel is in compliance with the Health Care Guidelines for Cruise Ship Medical Facilities established by the American College of Emergency Physicians; and

   (3) the initial safety briefing given to the passengers on board the vessel includes—

(A) the location of the vessel's medical facilities; and

(B) the appropriate steps passengers should follow during a medical emergency.

46 U.S.C. § 3509 (emphasis added).

21. Further, Royal Caribbean advertises on their website that: "<u>Our doctors</u> also have access to online informational resources and 24-hour support from shoreside medical professionals for additional assistance. <u>Royal Caribbean Group also requires</u> all doctors and nurses to maintain Advanced Cardiac Life Support (ACLS) training. In responding to medical emergencies, <u>our goal is to first stabilize emergency patients</u> and, when necessary, <u>evacuate the patient to an appropriately equipped and staffed shoreside medical facility</u>." (underline emphasis added). An excerpt of Royal Caribbean's website which supports the above text, which was in effect at the time of Plaintiff's incident, is excerpted below:

> **What licensed medical staff/doctor and services are available onboard a Royal Caribbean cruise ship?**
>
> Every Royal Caribbean ship offers limited professional medical services through licensed (international or domestic) physicians and nurses. All Royal Caribbean Group ships have shipboard medical facilities that are built, staffed, stocked, and equipped to meet or exceed guidelines established by the American College of Emergency Physicians Cruise Ship & Maritime Medicine Section.
>
> Depending on the size of the ship and number of passengers and crew members, each RCG ship has two to three licensed doctors and three to five licensed nurses available to passengers and crew members 24/7. Our doctors do not have NPI numbers, as that is a US-based requirement, instead they use tax IDs.
>
> Our medical facilities are stocked with a variety of equipment including cardiac monitors, automated external defibrillators, ventilators, x-ray machines and processors, laboratory equipment, a formulary of acute care medications, and a variety of minor surgical and orthopedic supplies. Our doctors also have access to online informational resources and 24-hour support from shoreside medical professionals for additional assistance. Royal Caribbean Group also requires all doctors and nurses to maintain Advanced Cardiac Life Support (ACLS) training. In responding to medical emergencies, our goal is to first stabilize emergency patients and, when necessary, evacuate the patient to an appropriately equipped and staffed shoreside medical facility.
>
> If you have been treated onboard, and need to request your medical records, please fill out the request form.

https://www.royalcaribbean.com/faq/questions/medical-services-onboard-regulations (last accessed January 22, 2026).

22. Prior to the subject cruise, and on or about January 18, 2025, Plaintiff reviewed Royal Caribbean's website, including the web page excerpted above, and relied upon same, to her detriment, in deciding to go on the subject cruise with Royal Caribbean.

23. Royal Caribbean owed Plaintiff a duty of care under theories of liability that include, but are not limited to:

a. **As a cruise ship operator and common carrier vis-à-vis Plaintiff, who held the status of a lawful passenger aboard the vessel, Royal Caribbean owed Plaintiff a common law duty to exercise reasonable care under the circumstances.** *Kermarec v. Compagnie,* 358 U.S. 625, 632, 79 S. Ct. 406, 410 (1959) ("We hold that the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case"); *Kantrow v. Celebrity Cruises, Inc.*, 510 F. Supp. 3d 1311, 1323 (S.D. Fla. 2020) ("Defendant does not argue—and cannot seriously contend—that it does not owe its passengers a duty of reasonable care during the boarding process"); *Lipkin v. Norwegian Cruise Line Ltd.*, 93 F. Supp. 3d 1311, 1320 (S.D. Fla. 2015) (observing that "cruise ship operators are common carriers with a 'continuing obligation of care for their passengers'").

b. **46 U.S.C. § 3509, which requires that "a physician is always present and available to treat any passengers who may be on board the vessel in the event of an emergency situation"**.

c. **Royal Caribbean undertook a duty of care:[3]**

   i. Based on the fact that Royal Caribbean shipboard and/or shoreside medical doctor(s) reviewed Plaintiff's Mexican hospital records, further to evaluating her condition; and examined Plaintiff while she was in the ground ambulance; and

   ii. Given its representation that "In responding to medical emergencies, our goal is to first stabilize emergency patients and, when necessary, evacuate the patient to an appropriately equipped and staffed shoreside medical facility". https://www.royalcaribbean.com/faq/questions/medical-services-onboard-regulations (emphasis added).

24. Prior to Plaintiff's incident, Royal Caribbean knew or should have known that its failure and/or refusal to provide cruise passengers with emergency medical care would cause the

---

[3] *See e.g. Christie v. Royal Caribbean Cruises, Ltd.*, 497 F. Supp. 3d 1227, 1232-33 (S.D. Fla. 2020) ("Florida courts have articulated a doctrine, known as the undertaker's doctrine, which states generally that 'whenever one undertakes to provide a service to others, whether one does so gratuitously or by contract, the individual who undertakes to provide the service thereby assumes a duty to act carefully and to not put others at undue risk of harm.'") (citing *Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1365 (S.D. Fla. 2015) (Bloom, J.) (citing *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003)). Indeed, this doctrine is recognized as an 'entrenched aspect of Florida tort law.' *Wallace v. Dean*, 3 So. 3d 1035, 1051 (Fla. 2009)").

passengers injury and/or aggravation of the passenger's condition(s). *See e.g. Schuman v. Royal Caribbean Cruises Ltd.,* Case No. 23-cv-24404 (S.D. Fla. 2023); *Lejano v. Royal Caribbean Cruises Ltd.,* Case No. 24-cv-20772 (S.D. Fla. 2024); *Murphy v. Royal Caribbean Corp.*, Case No. 19-cv-21450 (S.D. Fla. 2019); *Gharfeh v. Royal Caribbean Corp.*, 309 F. Supp. 3d 1317 (S.D. Fla. 2018); *Rinker v. Royal Caribbean Corp.*, Case No. 09-cv-23154 (S.D. Fla. 2010).

## ROYAL CARIBBEAN'S SHIPBOARD MEDICAL FACILITY

25. At all times material hereto, Royal Caribbean created, owned, managed, maintained and/or operated the medical facility aboard the vessel.

26. At all times material hereto, Royal Caribbean owned, operated, controlled, managed, and/or maintained the medical equipment in the medical facility aboard the vessel.

27. At all times material hereto, Royal Caribbean maintained, controlled, ordered and/or supplied the medicine and/or medical equipment, including diagnostic equipment, like an x-ray machine, for the medical facility aboard the vessel.

28. At all times material hereto, Royal Caribbean staffed the medical facility aboard the vessel with a doctor(s) and/or a nurse(s). At all times material, the doctor(s) and nurse(s) aboard the vessel were full-time employees of Royal Caribbean, subject to Royal Caribbean's control, as Royal Caribbean controlled the day-to-day activities of the shipboard doctor(s) and nurse(s) aboard the vessel (hereinafter collectively referred to as the "Medical Personnel").

29. At all times material hereto, Royal Caribbean had control and/or the right to control any and all members of the Medical Personnel working in Royal Caribbean's medical facility aboard the vessel, including the medical doctors, nurses and other medical personnel.

30. At all material times, Royal Caribbean hired, retained, and/or had the right and ability to fire members of the Medical Personnel it carried aboard the vessel.

31. At all times material hereto, the members of Royal Caribbean's Medical Personnel were in the regular, full-time employment of the vessel, as salaried members of the crew, subject to the vessel's discipline and the master's orders, and also under the control of Royal Caribbean's shoreside medical department located in Miami, Florida, through modern means of communication such as "Face-to-Face Telemedicine."

32. At all times material hereto, the Medical Personnel were employees, actual agents, apparent agents, and/or joint venturers of Royal Caribbean, and at all times material hereto, acted within the course and scope of their employment, agency, and/or joint venture relationship.

33. At all material times, Royal Caribbean was responsible for, and liable for, the actions of the Medical Personnel with respect to treatment, or lack of treatment, of Plaintiff, based on theories of *respondeat superior*, apparent agency and/or joint venture.

34. At no time did Royal Caribbean represent to Plaintiff in particular, or to the vessel's passengers in general, in a meaningful way, that the Medical Personnel were not agents or employees of Royal Caribbean, and/or that they were independent contractors.

## COUNT I – GENERAL NEGLIGENCE AGAINST ROYAL CARIBBEAN

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through thirty-four (34) above, as though alleged originally herein, and further alleges:

35. At all times material, Royal Caribbean owed Plaintiff a duty to exercise reasonable care under the circumstances.

36. On or about March 19, 2025, Royal Caribbean breached its duty to exercise reasonable care under the circumstances by:

    a.  Failing to reasonably evaluate Plaintiff's injury;

    b.  Refusing to provide Plaintiff with proper medical treatment, including stabilization and further evaluation;

c. Failing to reasonably assist Plaintiff obtain emergency evacuation to proper medical specialist; and

d. Negligence per se and/or violation of the *Pennsylvania* rule, for failing to comply with 46 U.S.C. § 3509.

37. Royal Caribbean's above-described negligent conduct directly caused Plaintiff's left leg fracture injury with popliteal artery rupture to worsen due to the passage of time without prompt and proper medical treatment, and Plaintiff's left leg was amputated above the knee. In addition to the pain and suffering this incident caused Plaintiff in the past, and that which she will suffer in the future, Plaintiff also suffers from functional limitations, past and future, incurred over $30,000 in out-of-pocket medical expenses; and lost of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, and incurred medical expenses in the care and treatment of her injuries.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against the Defendant and demands trial by jury.

**COUNT II – NEGLIGENT FAILURE TO WARN AGAINST ROYAL CARIBBEAN**

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through thirty-four (34) above, as though alleged originally herein, and further alleges:

38. At all times material, Royal Caribbean owed Plaintiff a duty to exercise reasonable care under the circumstances.

39. Further, and as part of the above mentioned duty, at all times material Royal Caribbean owed Plaintiff a duty to warn of dangers that were known, or reasonably should have been known, to Royal Caribbean, in places where passengers like Plaintiff and the Decedent were invited or were reasonably be expected to visit, including, but not limited to, in the ship's medical facility and/or as it pertains to the medical services Royal Caribbean offered and/or provided to passengers.

40. On or about March 19, 2025, Royal Caribbean breached its duty to exercise reasonable care under the circumstances, including the duty to warn, and Plaintiff was thereby injured due to the fault and negligence of Royal Caribbean as follows:

a.  Failure to reasonably warn passengers, including Plaintiff, that Royal Caribbean would not reasonably evaluate Plaintiff's if she were injured during the cruise;

b.  Failure to reasonably warn passengers, including Plaintiff, that Royal Caribbean would refuse to provide Plaintiff with proper medical treatment, including stabilization and further evaluation if she was injured during the cruise;

c.  Failure to reasonably warn passengers, including Plaintiff, that Royal Caribbean would not reasonably assist Plaintiff obtain emergency evacuation to proper medical specialist if she were injured during the cruise.

41. Royal Caribbean's above-described negligent conduct directly caused Plaintiff's left leg fracture injury with popliteal artery rupture to worsen due to the passage of time without prompt and proper medical treatment, and Plaintiff's left leg was amputated above the knee. In addition to the pain and suffering this incident caused Plaintiff in the past, and that which she will suffer in the future, Plaintiff also suffers from functional limitations, past and future, incurred over $30,000 in out-of-pocket medical expenses; and lost of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, and incurred medical expenses in the care and treatment of her injuries.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against the Defendant and demands trial by jury.

**COUNT III – NEGLIGENCE AGAINST ROYAL CARIBBEAN FOR THE NEGLIGENT CONDUCT OF ITS SHIPBOARD AND SHORESIDE PERSONNEL BASED ON A THEORY OF VICARIOUS LIABILITY UNDER *RESPONDEAT SUPERIOR***

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through thirty-four (34) above, as though alleged originally herein, and further alleges:

42. At all times material hereto, the Medical Personnel were the ship's doctors and nurses aboard the vessel.

43. At all times material hereto, the Medical Personnel were agents, servants and/or employees of Royal Caribbean.

44. At all times material hereto, the Medical Personnel and Royal Caribbean's shoreside medical doctors were acting within the scope of their employment and/or agency with Royal Caribbean.

45. At all times material hereto, Royal Caribbean acknowledged that the Medical Personnel would act on Royal Caribbean's behalf, and the Medical Personnel accepted the undertaking, based on the following:

   a. The Medical Personnel worked in the medical facility, which was created, owned and/or operated by Royal Caribbean.

   b. Royal Caribbean's logo and insignias were displayed in various places throughout the medical facility.

   c. Royal Caribbean's website publicly described the medical facility in proprietary language, including, but not limited to, "our medical facilities…"

   d. Royal Caribbean billed and collected payments directly from passengers for the medical services provided by the Medical Personnel, and Royal Caribbean did so through passengers' onboard accounts with Royal Caribbean.

   e. The Medical Personnel were employed full-time by Royal Caribbean.

   f. The Medical Personnel were paid a salary by Royal Caribbean.

   g. The Medical Personnel wore uniforms and/or nametags, which were provided by Royal Caribbean and had Royal Caribbean's name and logo.

   h. The Medical Personnel referred to themselves as crewmembers, and Royal Caribbean referred to the Ship's Doctors and Ship's Nurses as ship's officers.

   i. The Medical Personnel were under the commands of the ship's officers and followed all of the master's rules and regulations.

j. The Medical Personnel spoke to Plaintiff as though they had authority by Royal Caribbean to make decisions as to Plaintiff's medical incident and needs on Royal Caribbean's behalf.

46. At all times material hereto, the Medical Personnel were subject to the control and/or right to control by Royal Caribbean, based on the allegations set forth in the preceding paragraph, along with the following:

a. The Medical Personnel were employed full-time by Royal Caribbean, paid a salary by Royal Caribbean, and worked in the medical facility aboard the vessel which at all times material was created, owned maintained and/or operated by Royal Caribbean.

b. Royal Caribbean stocked and equipped the medical facility, and as such, the equipment (including diagnostic) and medications necessary for the Medical Personnel to perform their work was furnished by Royal Caribbean.

c. The Medical Personnel were subject to Royal Caribbean's training requirements and were under the commands of Royal Caribbean's ship's officers and the master's rules and regulations.

d. Royal Caribbean maintained control over the day-to-day operations and/or duties of the Medical Personnel.

e. Royal Caribbean had the right to fire the Medical Personnel.

47. At all times material hereto, Royal Caribbean had a duty to provide Plaintiff with reasonable care under the circumstances.

48. At all times material hereto, Royal Caribbean in addition to its shipboard and shoreside medical doctors, owed a duty to exercise reasonable care under the circumstances vis-à-vis Plaintiff.

49. At all times material hereto, Royal Caribbean, through the acts/omissions of its shipboard and shoreside medical doctors, breached their duty to exercise reasonable care under the circumstances to Plaintiff through the following acts and/or omissions:

a. Failing to reasonably evaluate Plaintiff's injury;

b. Refusing to provide Plaintiff with proper medical treatment, including stabilization and

further evaluation; and

c. Failing to reasonably assist Plaintiff obtain emergency evacuation to proper medical specialist; and

d. Breaching the prevailing professional standard of care for health care providers (i.e., the level of care, skill and treatment that, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by a reasonably prudent similar health care provider).

50. Royal Caribbean's shipboard and shoreside medical doctors' above-described negligent conduct directly caused Plaintiff's left leg fracture injury with popliteal artery rupture to worsen due to the passage of time without prompt and proper medical treatment, and Plaintiff's left leg was amputated above the knee. In addition to the pain and suffering this incident caused Plaintiff in the past, and that which she will suffer in the future, Plaintiff also suffers from functional limitations, past and future, incurred over $30,000 in out-of-pocket medical expenses; and lost of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, and incurred medical expenses in the care and treatment of her injuries.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against the Defendant and demands trial by jury.

### COUNT IV – NEGLIGENCE AGAINST ROYAL CARIBBEAN FOR THE ACTS OF THE MEDICAL PERSONNEL BASED ON A THEORY OF VICARIOUS LIABILITY UNDER APPARENT AGENCY

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through thirty-four (34) above, as though alleged originally herein, and further alleges:

51. At all times material hereto, the Medical Personnel were the ship's doctors and nurses aboard the vessel.

52. At all times material hereto, Royal Caribbean and the Medical Personnel represented to passengers aboard the vessel, including Plaintiff, that the Medical Personnel were Royal Caribbean's agents and/or employees, as follows:

a. The Medical Personnel worked in the medical facility, which was created, owned and/or operated by Royal Caribbean.

b. Royal Caribbean's logo and insignias were displayed in various places throughout the medical facility.

c. Royal Caribbean's website publicly described the medical facility in proprietary language, including, but not limited to, "our medical centers…"

d. Royal Caribbean billed and collected payments directly from passengers for the medical services provided by the Medical Personnel, and Royal Caribbean did so through passengers' onboard accounts with Royal Caribbean.

e. The Medical Personnel were employed full-time by Royal Caribbean.

f. The Medical Personnel were paid a salary by Royal Caribbean.

g. The Medical Personnel wore uniforms and/or nametags, which were provided by Royal Caribbean and had Royal Caribbean's name and logo.

h. The Medical Personnel referred to themselves as crewmembers, and Royal Caribbean referred to the Ship's Doctors and Ship's Nurses as ship's officers.

i. The Medical Personnel were under the commands of the ship's officers and followed all of the master's rules and regulations.

j. The Medical Personnel spoke to Plaintiff as though they had authority by Royal Caribbean to make decisions as to Plaintiff's medical incident and needs on Royal Caribbean's behalf.

53. At all times material hereto, Plaintiff reasonably relied on the above, to her detriment, so as to believe that the Medical Personnel were the agents and/or employees of Royal Caribbean in choosing to cruise aboard the vessel and seek medical attention from Royal Caribbean.

54. At all times material hereto, it was reasonable for Plaintiff to believe that the Medical Personnel were authorized to render medical services for Royal Caribbean's benefit because Royal

Caribbean billed passengers directly for the onboard medical services, Royal Caribbean's logo and insignias were displayed in various places throughout the medical facility, and/or Royal Caribbean's name and logo were on the Medical Personnel's uniforms and/or nametags. It was also reasonable because Royal Caribbean marketed the shipboard medical facility and/or the Medical Personnel in a manner so as to induce passengers, like Plaintiff, to buy cruises aboard Royal Caribbean's vessels and utilize its medical facility.

55. At all times material hereto, Plaintiff's reasonable reliance was detrimental because, had she known that the Medical Personnel were not Royal Caribbean's agents and/or employees, she would not have decided to cruise with Royal Caribbean nor sought treatment from the Medical Personnel, which ultimately delayed Plaintiff's medical treatment needs.

56. At all times material hereto, Royal Caribbean had a duty to exercise reasonable care under the circumstances vis-à-vis, including through the conduct of its apparent agents.

57. At all times material hereto, Royal Caribbean breached its duty to exercise reasonable care under the circumstances through the following acts and/or omissions of its shipboard and shoreside medical doctors:

a.  Failing to reasonably evaluate Plaintiff's injury;

b.  Refusing to provide Plaintiff with proper medical treatment, including stabilization and further evaluation; and

c.  Failing to reasonably assist Plaintiff obtain emergency evacuation to proper medical specialist; and

d.  Breaching the prevailing professional standard of care for health care providers (i.e., the level of care, skill and treatment that, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by a reasonably prudent similar health care provider).

58. Royal Caribbean's shipboard and shoreside medical doctors' above-described negligent conduct directly caused Plaintiff's left leg fracture injury with popliteal artery rupture to worsen

due to the passage of time without prompt and proper medical treatment, and Plaintiff's left leg was amputated above the knee. In addition to the pain and suffering this incident caused Plaintiff in the past, and that which she will suffer in the future, Plaintiff also suffers from functional limitations, past and future, incurred over $30,000 in out-of-pocket medical expenses; and lost of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, and incurred medical expenses in the care and treatment of her injuries.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against the Defendant and demands trial by jury.

### COUNT V – MISLEADING ADVERTISING IN VIOLATION OF FLORIDA STATUTE § 817.41 AGAINST ROYAL CARIBBEAN

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through thirty-four (34) above, as though alleged originally herein, and further alleges:

59. On or about January 18, 2025, Plaintiff reviewed Royal Caribbean's website prior to boarding the vessel, including the information set forth in paragraph 21 above.

60. At all times material hereto, Royal Caribbean's website, which Plaintiff reviewed, contained the statements set forth in paragraph 21 above.

61. At all times material hereto, Royal Caribbean's website representations, which Plaintiff reviewed, contained misrepresentations of material fact, including:

   a. Misrepresenting that "<u>Our doctors</u> also have access to online informational resources and 24-hour support from shoreside medical professionals for additional assistance. <u>Royal Caribbean Group also requires</u> all doctors and nurses to maintain Advanced Cardiac Life Support (ACLS) training. In responding to medical emergencies, <u>our goal is to first stabilize emergency patients</u> and, when necessary, <u>evacuate the patient to an appropriately equipped and staffed shoreside medical facility</u>"; **when in reality**, Royal Caribbean would refuse and/or fail to i) stabilize Plaintiff's injury and ii) evacuate Plaintiff to an appropriately equipped and staffed shoreside medical facility.

62. Pursuant to Florida Statute § 817.41(4), Royal Caribbean and its shipboard and shoreside medical doctors are responsible for the foregoing false and/or misleading advertisements because they were named in and/or obtained the benefits of the statements and/or advertisements.

63. At all times material hereto, the foregoing statements Royal Caribbean made and/or disseminated were known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be false and/or misleading.  This knowledge was or should have been acquired through prior similar incidents. *See e.g. Schuman v. Royal Caribbean Cruises Ltd.,* Case No. 23-cv-24404 (S.D. Fla. 2023); *Lejano v. Royal Caribbean Cruises Ltd.,* Case No. 24-cv-20772 (S.D. Fla. 2024); *Murphy v. Royal Caribbean Corp.*, Case No. 19-cv-21450 (S.D. Fla. 2019); *Gharfeh v. Royal Caribbean Corp.*, 309 F. Supp. 3d 1317 (S.D. Fla. 2018); *Rinker v. Royal Caribbean Corp.*, Case No. 09-cv-23154 (S.D. Fla. 2010).

64. At all times material hereto, the statements were so made or disseminated with the intent or purpose, either directly or indirectly, of inducing passengers (including Plaintiff) to rely on the statements and act by purchasing cruise packages with Defendant.

65. At all times material hereto, the Plaintiff justifiably relied on the representations made by Royal Caribbean when Plaintiff decided to cruise with Royal Caribbean and purchased her fare for same. Plaintiff's reliance on Royal Caribbean's representations were justified considering that Plaintiff is a Florida resident, and Royal Caribbean is a Florida cruise line in the business of offering vacation cruises to thousands of passengers daily, from which it earned tens of millions of dollars a year (or more). As a result, Royal Caribbean was in a much stronger position to identify the potential dangers and/or inequities that passengers (like Plaintiff) will encounter when participating in the subject cruise. Plaintiff therefore justifiably relied on Royal Caribbean to accurately advise her concerning medical services Royal Caribbean offered as part of its cruise.

Further, had Royal Caribbean not made the foregoing representations, Plaintiff would have made a different decision, such as not cruising with Royal Caribbean.

66. Royal Caribbean's above-described negligent conduct directly caused Plaintiff's left leg fracture injury with popliteal artery rupture to worsen due to the passage of time without prompt and proper medical treatment, and Plaintiff's left leg was amputated above the knee. In addition to the pain and suffering this incident caused Plaintiff in the past, and that which she will suffer in the future, Plaintiff also suffers from functional limitations, past and future, incurred over $30,000 in out-of-pocket medical expenses; and lost of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, and incurred medical expenses in the care and treatment of her injuries.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against the Defendant and demands trial by jury.

**COUNT VI – NEGLIGENT MISREPRESENTATION AGAINST ROYAL CARIBBEAN**

Plaintiff realleges, adopts, and incorporates by reference the allegations in paragraphs one (1) through thirty-four (34) above, as though alleged originally herein, and further alleges:

67. On or about January 18, 2025, Plaintiff reviewed Royal Caribbean's website prior to boarding the vessel, including the information set forth in paragraph 21 above.

68. At all times material hereto, Royal Caribbean's website, which Plaintiff reviewed, contained the statements set forth in paragraph 21 above.

69. At all times material hereto, Royal Caribbean's website representations, which Plaintiff reviewed, contained misrepresentations of material fact, including:

    b. Misrepresenting that "Our doctors also have access to online informational resources and 24-hour support from shoreside medical professionals for additional assistance. Royal Caribbean Group also requires all doctors and nurses to maintain Advanced Cardiac Life Support (ACLS) training. In responding to medical emergencies, our goal

is to first stabilize emergency patients and, when necessary, evacuate the patient to an appropriately equipped and staffed shoreside medical facility"; **when in reality**, Royal Caribbean would refuse and/or fail to i) stabilize Plaintiff's injury and ii) evacuate Plaintiff to an appropriately equipped and staffed shoreside medical facility.

70. At all times material hereto, the foregoing statements Royal Caribbean made and/or disseminated were known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be false and/or misleading.  This knowledge was or should have been acquired through prior similar incidents. *See e.g. Schuman v. Royal Caribbean Cruises Ltd.,* Case No. 23-cv-24404 (S.D. Fla. 2023); *Lejano v. Royal Caribbean Cruises Ltd.,* Case No. 24-cv-20772 (S.D. Fla. 2024); *Murphy v. Royal Caribbean Corp.*, Case No. 19-cv-21450 (S.D. Fla. 2019); *Gharfeh v. Royal Caribbean Corp.*, 309 F. Supp. 3d 1317 (S.D. Fla. 2018); *Rinker v. Royal Caribbean Corp.*, Case No. 09-cv-23154 (S.D. Fla. 2010).

71. At all times material hereto, the statements were so made or disseminated with the intent or purpose, either directly or indirectly, of inducing passengers (including Plaintiff) to rely on the statements and act by purchasing cruise packages with Defendant.

72. At all times material hereto, the Plaintiff justifiably relied on the representations made by Royal Caribbean when Plaintiff decided to cruise with Royal Caribbean and purchased her fare for same. Plaintiff's reliance on Royal Caribbean's representations were justified considering that Plaintiff is a Florida resident, and Royal Caribbean is a Florida cruise line in the business of offering vacation cruises to thousands of passengers daily, from which it earned tens of millions of dollars a year (or more). As a result, Royal Caribbean was in a much stronger position to identify the potential dangers and/or inequities that passengers (like Plaintiff) will encounter when participating in the subject cruise. Plaintiff therefore justifiably relied on Royal Caribbean to accurately advise her concerning medical services Royal Caribbean offered as part of its cruise.

L I P C O N ,   M A R G U L I E S   &   W I N K L E M A N ,   P . A .

Further, had Royal Caribbean not made the foregoing representations, Plaintiff would have made a different decision, such as not cruising with Royal Caribbean.

73. Royal Caribbean's above-described negligent conduct directly caused Plaintiff's left leg fracture injury with popliteal artery rupture to worsen due to the passage of time without prompt and proper medical treatment, and Plaintiff's left leg was amputated above the knee. In addition to the pain and suffering this incident caused Plaintiff in the past, and that which she will suffer in the future, Plaintiff also suffers from functional limitations, past and future, incurred over $30,000 in out-of-pocket medical expenses; and lost of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, and incurred medical expenses in the care and treatment of her injuries.

**WHEREFORE**, the Plaintiff demands judgment for all damages recoverable under the law against the Defendant and demands trial by jury.

Dated: January 26, 2026.

Respectfully submitted,

LIPCON, MARGULIES,
& WINKLEMAN, P.A.
2800 Ponce de Leon Blvd., Suite 1480
Coral Gables, FL 33134
Telephone: (305) 373-3016
Facsimile: (305) 373-6204

By: */s/ Luis Alexander Perez*
**LUIS ALEXANDER PEREZ**
Florida Bar No. 125452
aperez@lipcon.com